## PRESCOTT & a. APP'TS. v. CARR, ADM'R., APP'E.

If a brother die of age, unmarried, without any father living, and leaving personal property not derived by descent or devise, his brothers and sisters, and their representatives of the half blood, will take their shares in his estate equally with the brothers and sisters of the whole blood.

Independent of statutory enactment, no distinction is admitted between the whole and half bloods.

In determining who shall inherit an estate, the source from which it was derived is not regarded, except in cases where the statute has made that circumstance material.

Under the provisions of section 2 of chapter 166 of the Revised Statutes, if a man dies leaving children, and one of them dies under age and unmarried, the surviving children of the deceased father will take the deceased child's share of the father's estate, to the exclusion of the brothers and sisters of the half blood, children of the same mother but by a different father.

APPEAL from the decree of the judge of probate of this county. The following facts were agreed upon by the parties. Thomas Babb, the deceased, died at Meredith, in

this county, on the 22d day of October, 1851, intestate, of age, unmarried, without issue, and leaving personal estate not derived by inheritance or descent, appraised at $13,239,13. Administration was granted to John Carr, November 18th, 1851. The father of the deceased was Thomas Babb, who died in 1808, and his mother was Sarah Babb, who died March 8th, 1852.

Thomas Babb, senior, was twice married; first, to Elizabeth Wallace, by whom he had five children, viz: Margaret, Sarah, Elizabeth, Jane Wallace and Rachel. Of these children, Sarah and Elizabeth are dead, leaving no children. In 1803, Margaret married James Prescott, and has since deceased, leaving two children by him, viz: True McClary and Lucy M., both now living. Jane Wallace first married Samuel Wallace, by whom she had one daughter, Elizabeth, now the wife of Nathaniel Moulton. After the death of her first husband, said Jane Wallace married Jonathan Moulton, by whom she had another daughter, Sarah J., now the wife of Valorous Lord. Jane Wallace is dead. Rachel married Jesse Stevens, and had by him four children, viz: Elbridge, Emery, Sewell T. and Samuel D. T., all now living. Rachel is dead.

Elizabeth Wallace, the first wife of Thomas Babb, senior, having deceased, he married Sarah Blake, and by her had five children, viz: Priscilla, Hannah, Amelia, James, and Thomas, this intestate. Priscilla married John Carr, this administrator, and died, leaving two sons, viz: Thomas B. and Artemas. Amelia and James are still living.

George Wallace devised to said Thomas Babb, senior, and Elizabeth, his wife, and unto the heirs of her body, certain real estate, which was enjoyed and occupied by said Thomas until his death, when said real estate, appraised at $1,000, was distributed among his children by his said wife Elizabeth.

Upon administering the estate of this deceased, Thomas Babb, the administrator, John Carr, petitioned the judge of

probate for a decree of distribution, and represented Sarah, the last wife of Thomas Babb, senior, said James and Amelia, and Thomas B. and Artemas Carr, as the heirs and only heirs to the estate of Thomas Babb, junior, thereby wholly excluding True McClary and Lucy M. Prescott, Elizabeth Moulton and Sarah J. Lord, and Elbridge, Emery, Sewell T. and Samuel D. T. Stevens, children, and the legal representatives of children, by the first marriage, of Thomas Babb, senior, with said Elizabeth Wallace, who claim to be of the next of kin and co-heirs, and entitled by right and in law to be named in said decree as distributees in the estate of said Thomas Babb, junior.

The judge of probate entertained an opinion adverse to the prayer of the petition; but by the agreement and consent of the parties, and with a view to take the opinion of the superior court upon the question of the distribution of the estate, a decree was entered in accordance with the prayer of the petition; whereupon those claiming to be next of kin and co-heirs took this appeal.

*Stevens*, for the appellants, contended that brothers and sisters of the half blood succeed to the inheritance of intestate estates equally with those of the whole blood; and in support of his position he cited the following authorities. 1 Black. Com. 223, note; *Idem* 504, 505, 515, 516; 2 Kent's Com. 423–429 and notes; 4 Kent's Com. 403, 404 and notes; Cruise's Dig., Tit. Descent, ch. 3, part 46, note; 3 do. ch. 3, p. 452, note; 2 Sug. on Vend. 18 and note; *Sheffield* v. *Lovering*, 12 Mass. Rep. 490; *Parker* v. *Nims*, 2 N. H. Rep. 460; *Crowell* v. *Clough*, 3 Foster's Rep. 207; Rev. Stat. p. 331.

*Rogers*, for the appellees, to the point that brothers and sisters of the whole blood only succeed to the inheritance of the intestate, cited Rev. Stat. p. 331; Black. Com., Title

Inheritance; Cruise's Dig. Title Distribution; 4 Bevins' Eccl. Law 422; *Burnett* v. *Mann*, 1 Vez. 156.

He contended, also, that a brother or sister must, in law, have the same father and mother; *Morrill* v. *Otis*, 12 N. H. Rep. 466; Webster's Dictionary, Defi. Brother; and that, consequently, half bloods cannot succeed to the inheritance under the statute.

EASTMAN, J. The deceased, Thomas Babb, jr., died intestate, of age, unmarried, without issue, and without a father living, leaving personal property not derived by descent or devise. He had, at the time of his death, the following heirs, who, according to our statute, were in the same line of inheritance, viz: his mother, Sarah Babb, his own brother and sister, James and Amelia Babb, and two nephews, Thomas B. and Artemas Carr, children of another sister, Priscilla Carr, deceased.

He had, also, at the time of his death, the following nephews and neices, viz; True McClary and Lucy M. Prescott, Elizabeth Moulton and Sarah J. Lord, and Elbridge, Emery, Sewell T. and Samuel D. T. Stevens. These nephews and neices were the children of the half sisters of the deceased; and the half sisters were the children of his father by a former wife.

The controversy, then, is between children and their representatives of the same father by different mothers; and the question is, do they all take alike from their brother, the deceased, or do the brothers and sisters of the same mother of the deceased, together with the mother, take the whole of the property, to the exclusion of the half bloods?

By the fifth section of chapter 166 of the Revised Statutes, it is provided that the personal estate of any person deceased, not bequeathed, remaining in the hands of the administrator, on settlement of his administration account, shall be distributed by decree of the judge:

First, to the widow, the share thereof by law prescribed.

Second, the residue, in equal shares, to the same persons to whom the real estate, if there were any, would by law descend.

As the deceased left no widow, his property, being personal estate, would, under this section of the statute, be distributed to the same persons to whom it would have descended had it been real estate.

By the first section of the same chapter, it is provided that the real estate of every person deceased, not devised, &c., shall descend in equal shares:

First, to the children of the deceased and the legal representatives of such of them as are dead.

Second, if there be no issue, to the father, if he is living.

Third, if there be no issue nor father, in equal shares to the mother, and to the brothers and sisters, or their representatives.

Fourth, to the next of kin, in equal shares."

The second section of the chapter is as follows: "If any person shall die under age and unmarried, his estate, derived by descent or devise from his father or mother, shall descend to his brothers and sisters, or their legal representatives, if any, to the exclusion of the other parent."

The intestate, in this case, leaving no issue and no father living, and being more than twenty-one years of age, and having accumulated his property himself, his estate must be distributed under the third clause of the first section, "in equal shares to the mother and to the brothers and sisters, or their representatives."

It could not be distributed under the second section, because his estate was not derived by descent or devise from his father or mother. He was, moreover, not under age, as required by this section. Who, then, were his brothers and sisters, or their representatives, who would take his estate under the third clause of the first section?

In giving a construction to the second section, we held in

*Crowell* v. *Clough,* 3 Foster's Rep. 207, that where a man dies leaving several children, and one of them dies under age and unmarried, the surviving children of the deceased father will take the deceased child's share in their father's estate, to the exclusion of his brothers and sisters of the half blood, by the same mother, but by a different father.

But although it was held in that case, that, upon the facts presented, the property being derived by descent from the father, the half bloods would not be entitled to a distributive share, yet it was so decided under the particular provisions of the second section of the statute; and the general doctrine that, independent of express statutory enactment, no distinction is admitted between the whole and half bloods, was distinctly recognized.

In the course of the opinion delivered by *Perley,* J., it was said that the estate of the deceased, inherited from her father, will not go to her heirs and next of kin, *as it would* if it had come to her from another source. And again : " The surviving children do not take, under the general rule of descent, as heirs and next of kin to the deceased brother or sister, but they take, under the special provision of the statute, the share of the deceased brother or sister, as part of the parent's estate."

Prior to the decision of *Crooke* v. *Watts,* 2 Vern. 124, the rule in regard to half bloods appears not to have been uniform, but ever since that decision, which was in 1690, and which was affirmed in the House of Lords, it has been regarded as settled that, under the English statute of distributions, brothers and sisters of the half blood share equally with those of the whole blood. Shower's Cases in Parliament 108 ; 1 Mod. Rep. 209 ; 1 Vernon's Rep. 403.

No distinction exists between the whole and half bloods in ascertaining who, under that statute, are the next of kin entitled to distribution. 4 Burns' Eccl. Law 422; *Burnett* v. *Mann,* 1 Vesey 156 ; 2 Kent's Com. 424.

Our statute of descents is copied, in substance, from the

English statute of distributions; and we never look to the source whence the estate was derived, to determine who shall inherit, except in cases where our statute has made that circumstance material. *Perkins* v. *Nims*, 2 N. H. Rep. 461.

And such, it is believed, has been the general rule in this State. No distinction has been admitted between the whole and half bloods, except where the statute has interfered to change the descent of property, which may have been derived in the particular manner set forth in the second section.

Under that section, the doctrine of *Crowell* v. *Clough* is undoubtedly correct. The statute is the rule governing such cases, and the general principle of distributions is broken in upon. The statute of Massachusetts is, substantially, like ours, and the same construction has been put upon it as with us. Thus, in *Sheffield* v. *Lovering*, 12 Mass. Rep. 490, the father died seized in fee of land, leaving an only child and a widow, the mother of the child; the child died under age, not having been married; and it was held that, on the death of the child, the land descended, in equal shares, to the surviving mother and to her children by a former husband, brothers and sisters of the half blood, to the child. This decision was made upon the ground that there were no brothers and sisters, children of the father from whom the land descended, to take the property, after the death of the child, under the special provision of the statute, and so it descended according to the general rule.

The Massachusetts statute, regulating the distribution of property among the brothers and sisters of the deceased children of the parent from whom it descended, differs from ours in one respect. It does not embrace property derived by devise *and* descent, as ours does, but only by descent. *Nash* v. *Cutler*, 16 Pick. 491. But this does not affect the construction put upon the statutes, so far as they go.

After a careful consideration of this case, we entertain no

doubt that, independent of the special provisions of the second section of our statute, there is no distinction to be made between brothers and sisters of the whole and half blood. We have one uniform, general rule for the descent of real and personal property. Whether real or personal, it goes alike to the same persons and in the same proportions; and the English statute of distributions is its basis; a statute, which, says Chancellor *Kent*, being founded in justice, and in the wisdom of ages, and fully and profoundly illustrated by a series of judicial decisions, has been well selected as the most suitable and judicious basis on which to establish our American law of descent and distribution. 2 Kent's Com. 428.

Upon these principles, the property of the deceased, not having been derived by descent or devise from his father or mother, will fall to his mother, and to all of his brothers and sisters and their representatives, of the half blood as well as the whole. All of the children of Thomas Babb, senior, or their representatives, whether the issue of his first or second marriage, are entitled to a distributive share of the estate of the deceased.

The opinion of the judge of probate was, therefore right, but the decree as entered must be reversed.

*Decree reversed.*